# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MICHAEL E. LIPSCOMB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C.A. No. 1:07CV00103 (JDB)** |
| | ) | |
| **DONALD C. WINTER,** | ) | |
| **Secretary of the Navy,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY <u>JUDGMENT OR DEFAULT JUDGMENT</u>

Defendant herein replies to Plaintiff's Opposition to Defendant's Motion to Dismiss or for Summary Judgment, Cross Motion for Summary Judgment, and Motion for Default ("Plaintiff's filing") as follows:

### I.  Defendant Addresses Herein Plaintiff's "Undisputed Facts"; Plaintiff Has <u>Not Addressed Defendant's Statement of Material Facts Not in Dispute.</u>

Defendant refers the Court to the attached Statement Addressing Plaintiff's Statement of "Undisputed Facts" in support of his Cross Motion.  Plaintiff has failed to submit a separate concise statement of facts with record citations addressing Defendant's Statement of Material Facts Not in Dispute as required by Local Civil Rule LCvR 7(h).  Accordingly, Defendant's Statement of Material Facts may be deemed by the Court as admitted.

<u>Discussion</u>

Local Civil Rule LCvR 7(h) requires that "[a]n opposition to [a motion for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated,

which shall include references to the parts of the record relied on to support the statement." In

the absence of such a statement, "the court may assume that facts identified by the moving party

in its statement of material facts are admitted." Id.

## II.  Plaintiff's Only Nonpromotion Claim before this Court is Untimely.

The issue in this Court concerning Plaintiff's 1999 nonpromotion is set forth in Exhibit A

of Plaintiff's Complaint. R. 1 (EEOC Commission Decision), *i.e.*, "[o]n or about April 21, 1999,

he was denied a promotion to Housing Manager, GS-1173-11 [based on his age and sex]. Id.,

Exhibit A, p. 1.  Plaintiff has presented absolutely no evidence in his opposition that he sought

and was denied a promotion for which he was qualified on or about April 21, 1999.  See

Plaintiff's filing.  No other nonpromotion claim is before this Court.

Discussion

There is no evidence that Plaintiff sought and was denied a promotion on or about April

21, 1999.  See Plaintiff's filing.  But, in an attempt to make his untimely nonpromotion claim a

timely claim, Plaintiff now asserts that he sought and was denied a promotion for which he was

qualified on March 4, 1999, and when Ms. Floramae Thompson was promoted in 2000.

Plaintiff's filing at pp. 12-14.

With regard to the new March 4, 1999, claim, Plaintiff suggests that the counseling he

sought on March 31, 1999, was for the March 4, 1999, nonpromotion claim. Id. at p. 3, ¶ 8.  As

evidence that he sought counseling on March 31, 1999, for his March 4, 1999, nonpromotion

claim, Plaintiff directs the Court to his Employee Performance Journal Progress Report, dated

March 4, 1999 [see Id. at Attachment 30-37, p. 203], which reflects a notation that he was told

"that his pending promotion is not forthcoming . . ."   See Plaintiff's filing, p. 9 at 203

(referencing 30-37, p.1 or 1). Plaintiff argues that this journal entry establishes that he sought EEO counseling for this within the same month in which he had knowledge of it. Id. p, 3. However, a review of Plaintiff's Formal Complaint to the agency, dated June 22, 1999 [R. 19 at Attachment 3], and the "Accepted Claims" during the administrative proceedings [R. 1, Exhibit A] demonstrates otherwise. These documents show that Plaintiff did not seek EEO counseling for a 1999 nonpromotion claim, but only that he inquired about his promotion in October 1997 and October 1998. R. 19, Attachment 3 at p. 7. Moreover, the discussions he had with the EEO Counselor with regard to a nonpromotion claim [R. 19, Attachment 1, p. 13], establish that Plaintiff was complaining to the Counselor about his 1998 nonpromotion which was denied by Commander Arrowood, the Commanding Officer who had left the Command by 1999. See Exhibit B, hereto.[1]   To the extent that Plaintiff now contends that he sought counseling on

---

[1] Defendant has attached Exhibits A-E to this filing in order to defend against arguments presented by Plaintiff in his Cross Motion for Summary Judgment. These exhibits address representations by Plaintiff in his Cross Motion and "Undisputed Facts" and show:

Exhibit A - That his supervisor did not put him in for a promotion in March 1999.
Exhibit B - That his EEO counseling was not for a March 4, 1999, nonpromotion.
Exhibits C & D - That there was more than one complaint concerning his performance.
Exhibit E - That MS2 Arthur did provide a sworn statement concerning Plaintiff's possible sexual harassment of her.

Specifically, Exhibit A is a sworn declaration by Ms. Brown stating that she did not submit his promotion in 1999 and that Plaintiff knew at the time that until issues concerning his poor performance were addressed and resolved, he would not be promoted to the next level. Exhibit B is a declaration establishes that Commander Arrowood, who is the only supervisor mentioned in the EEO Counselor's report as declining to promote Plaintiff, was not even at of the Command in 1999. Exhibits C & D are declarations that support Ms. Brown's statements regarding Plaintiff's poor performance. They are referenced in Defendant's Statement Addressing Plaintiff's "Undisputed Facts" in connection with his representation that there was only one complaint about his performance. Similarly, Exhibit E addresses Plaintiff's factual representation that MS2 Arthur was not interviewed and did not sign a sworn statement regarding the alleged sexual harassment incident involving Plaintiff.

March 31, 1999, for a March 4, 1999, nonpromotion by his supervisor Ms. Glenda Brown, she makes clear that she did not resubmit Plaintiff's promotion on March 4, 1999, or at anytime in 1999. See Exhibit A, hereto. Finally, Defendant observes that the first time Plaintiff provided a written nonpromotion claim in his EEO case was by memorandum to the EEO Counselor on April 21, 1999 [R. 19, Attachment 3 at p. 5], 45 days after he was allegedly "informed" of his "new" nonpromotion on March 4, 1999.[2]

With regard to the new nonpromotion claim involving the promotion of Floramae Thompson, that promotion, [which was a competitive promotion], it was approved on June 5, 2000, a year after he sought EEO counseling, and, there is no record that Plaintiff even applied for the position. R. 30-21  Clearly, he cannot claim he sought counseling for this claim in this case as counseling was concluded when he filed his Formal Complaint on June 22, 1999. R. 19, Attachment 3.

Moreover, Plaintiff admitted at his deposition that he did not seek a promotion on April 21, 1999, or at any time within 45 days of when he first sought EEO counseling in this case. Defendant's Motion, Attachment 2, Deposition of Michael Lipscomb (Lipscomb Dep.) at pp, 112, lines 3-5; p. 113, lines 8-19. If this date was incorrect, he had an opportunity to correct it, but made no attempt to do so during the administrative process and, in fact, refused to participate in the EEO process at all when given an opportunity to do so. Id. at pp. 85-88; see

---

[2] In the EEO Counselor's Report [R. 19, Att. 2], a nonpromotion claim in 1997 is discussed on page 3, and is a period for which plaintiff admits he did not seek counseling. Plaintiff's filing at R. 30, page 9 of 26.  No 1999 nonpromotion claim is raised. Id.

also Investigator's Declaration at D. 30-41.[3]  Although Plaintiff's counsel has attempted to

rehabilitate Plaintiff's testimony at his deposition by suggesting a "continuing violation theory,"

i.e., that Plaintiff "never stopped" putting in for promotion [Plaintiff's filing at p. 12 of 26], such

a theory no longer has vitality.  See National Railroad Passenger Corp. v. Morgan, supra.

Morgan, 536 U.S.101, 113 (2002).  Plaintiff has a responsibility to come forward on a timely

basis when he is informed of what he perceives as an adverse personnel action.  See, Morgan,

536 U.S. at 114.  Because discrete acts are, by their nature, not continuing, the "continuing

violations theory" cannot apply to them.  Id. at 113.  Accordingly, Plaintiff's claims of

nonpromotion in 1997, 1998, or April 1999 or thereafter are untimely.

In Plaintiff's filing, he attempts to distinguish Taylor v. Small, 350 F.3d 1286 (D.C. Cir.

2003), in which the plaintiff unsuccessfully claimed her responsibilities were at a higher grade

level and, therefore, she warranted a promotion.  See Plaintiff's filing at p. 12.  Plaintiff suggests

that his case is inapposite to Taylor for a number of reasons, including the fact that Taylor did

not involve a noncompetitive promotion as this one does. Id.  Plaintiff ignores Bolden v.

Ashcroft, et al., 515 F.Supp.2d 127, 132 (D.D.C. 2007), relied on by Defendant in his opening

brief. R. 19, p. 23.  Judge Sullivan recognized that the second half of the prima facie test laid out

in Taylor [350 F.3d at 1294] was required in a noncompetitive promotion case as well as when

there was a competitive promotion. Id.  To reiterate, that prong requires that there be a similarly-

---

[3]Plaintiff's nonpromotion claim accepted for investigation was "You allege that on April 21, 1999, you were denied a promotion to Housing Manager, GS-1173-11 because of your race (African-American) ... and sex (male).  R. 19, at Attachment 20, Document 19-21, p 2 of 4. Plaintiff was advised that if he disagreed with the scope of the accepted claims, he should contact the EEO Counselor immediately.  He did not indicate that the real date was March 4, 1999.

situated employee--a comparator in all relevant regards to plaintiff--who was promoted "to a higher salary grade when plaintiff was denied a promotion, . . " <u>Bolden</u> 515 F.Supp.2d at 132; <u>see</u> <u>Taylor</u> (plaintiff "must show that [he] sought and was denied a promotion for which [he] was qualified, and that 'other employees of similar qualifications... were indeed promoted **at the time the plaintiff's request for promotion was denied.**'" 350 F.3d at 1294 (*citing* <u>Bundy v. Jackson</u>, 641 F.2d 934, 951 (D.C. Cir. 1981) (emphasis added); <u>see also</u> <u>Kilby-Robb v. Spellings</u>, 522 F.Supp.2d 148 (no other individuals were promoted when plaintiff's alleged request was denied).   In the instant case, there were no other employees in Plaintiff's office promoted at the same time as Plaintiff's alleged nonpromotion claim, whether it be March 4, 1999, or April 21, 1999, or any time before Plaintiff filed his Formal Complaint on June 22, 1999.[4]

The only comparator that Plaintiff now identifies is Floramae (Teasha) Thompson. Plaintiff's filing at pp. 12-13.  However, he admits in his filing that Ms. Thompson was temporarily promoted to a GS-11 position in 2000 [R. 19, Att. 24, p. 2] and permanently promoted to a GS-11 position in July 2000. <u>Id</u>.  As Plaintiff alleges a nonpromotion at a time when no other individual in his office was promoted to a GS-11 position, his claims must fail under the dictates of <u>Taylor</u>, <u>Bolden</u>, <u>Bundy</u> and <u>Kilby-Robb</u>, <u>supra</u>.  As noted in <u>Kilby-Robb</u>, "[t]he Court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" <u>Kilby-Robb v. Spellings</u>, 522 F.Supp.2d at 161 (*citing* <u>Fischbach v.</u>

---

[4] The promotion dates of others in Plaintiff's office appear at Attachment 24 of R. 19 (Defendant's Motion to Dismiss or for Summary Judgment), at Supplemental Response to Interrogatory #1.  Defendant notes that Plaintiff's counsel was given free access to these employees' Official Personnel Files and others during discovery, but he declined to review them.

Dist. of Columbia Dep't of Corrs., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (*quoting* Milton v.

Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982).

### III.  There is No Evidence that Plaintiff was Treated Differently than Similarly-Situated Employees Not of His Protected Class.

Plaintiff alleges [at R. 30, p. 9 of 26] that he was the subject of disparate treatment in

March 1999, because none of his "similarly situated" co-workers were treated like him, i.e.:

(1)  subject of criticism for making a high number of telephone calls from his desk (¶ 12),
(2)  transferred or deprived of a recommended promotion due to one or two complaints about their work." (¶ 13),
(3)  assigned to desk duty, ordered to have no contact with customers, and eventually reassigned due to an allegation of sexual harassment . . ."  (¶14);
(4)  removed from his job and reassigned (¶15),
(5)  transferred due to an allegation of sexual harassment when the accuser refused to even provide an affidavit (¶16),
(6)  was informed in March of 1999 that he would not receive his pending promotion (¶17),
(7)  had his supervisor immediately agree with a resident who stated that she "did not think he was suited for his position in Flag Housing,."
(8)  directed to train a Caucasian female who was later promoted over him. (¶19),
(9)  placed on desk duty, ordered not to contact customers, was reassigned, and had stereotypical sexist statements about him (¶ 20).

See Plaintiff's filing, R. 30, p. 4 of 26 through 6 of 26.

Discussion

Although several of these allegations do not appear in Plaintiff's Formal Complaint to the

agency, his claims fall in three basic categories: (1)  Plaintiff's nonpromotion claim; (2)

Criticism of Plaintiff's work and related matters, including his reassignment; and (3) Plaintiff's

hostile work environment claim.  Based on the evidence submitted, none of these claims can

survive Defendant's dispositive motion.

Nonpromotion.  There is no evidence in the record and Plaintiff has offered none to show

that he sought and was refused a promotion on April 21, 1999 [or at any time before the agency

7

accepted the claims for investigation-12/13/99], and someone similarly-situated to him and outside his protected class(es) was promoted. During discovery, Plaintiff appeared to be suggesting that a number of females and Caucasians were promoted and he was not even though he "trained" them and had more "experience" on the job. However, in Plaintiff's filing, he points to only one comparator, Floramae Thompson, a Caucasian female, who was promoted to a GS-11 position in July 2000. R. 19, Attachment 24, p. 2. However, as noted above, her promotion was as a result of a competitive process in 2000 and there is no evidence that Plaintiff filed an application and competed for this position. Ms. Thompson was selected for the promotion in June 2000 [Plaintiff's filing, R. 30-21, p. 153], over a year after Plaintiff sought counseling for the claims in this case. Even Ms. Thompson's temporary promotion did not begin until after Plaintiff had served in his temporary GS-11 detail. See R. 19, Attachment 24, p. 2 & Plaintiff's filing, R. 30-11, p. 34. Accordingly, Plaintiff has not established a disparate treatment claim with regard to his alleged nonpromotion.

       <u>Criticism for Work Related Matters and Reassignment to Different Duties.</u> Nothing in Plaintiff's filing addresses Defendant's arguments set forth at pp. 23, 26-28, that there were legitimate nondiscriminatory reasons for the criticisms levied by Ms. Brown and Lt. Commander Trotta and his subsequent change of duty assignments. Indeed, Plaintiff has not disputed, pursuant to Local Rule LCvR 7(h), Defendant's Statement of Materials Facts that address these claims. <u>See</u> Statement of Facts at ¶¶ 12, 13, 15, 18; <u>see also</u> ¶¶ 8, 10.

       Moreover, a closer review of Plaintiff's allegations show that none rise to the level of an adverse personnel action. In order to constitute an adverse action, an employment action must have a significant effect on the material benefits or status of the employee. Employment actions

that merely displease the employee are thus not sufficient to constitute adverse actions. Forkkio
v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002). The employment actions that Plaintiff bases his
claims of discrimination upon - abusing telephone usage, being criticized and labeled as being
inadequate for his job, and being investigated for alleged sexual harassment - did not have a
significant effect on Plaintiff's material employment benefits or responsibilities, and thus none of
the actions constituted adverse actions under the law in this jurisdiction. See Burlington Indus.
Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Adverse effects are considered significant only when
they are "materially adverse consequences affecting the terms, conditions, or privileges of
employment or future employment opportunities such that a reasonable trier of fact could find
objectively tangible harm." Forkkio v. Powell, 306 F.3d at 1131; see also Holcomb v. Powell,
433 F.3d 889, 902 (D.C. Cir. 2006). Therefore, only such material actions as a "reassignment
with *significantly* different responsibilities" or "a *significant* change in benefits" constitute
adverse actions under Title VII. Id. at 1131 (*quoting* Burlington Indus. Inc., 524 U.S. at 761)
(emphasis added).

Due to the requirement that an action must affect the material responsibilities or benefits
relating to a employee's job in order to be considered adverse, subjective actions that merely
displease the employee do not constitute adverse actions. An employee's "[m]ere idiosyncracies
of personal preference" are "not sufficient to state an injury," and thus injuries that are purely
subjective, "such as dissatisfaction with a reassignment . . . or public humiliation or loss of
reputation are not adverse actions." Forkkio, 306 F.3d at 1130. An employment action that
makes an employee unhappy or aggrieved therefore does not constitute an adverse action.
Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006).

9

No diminution in pay or benefits relating to Plaintiff's job resulted from Plaintiff being asked to repay unauthorized telephone charges or being investigated with no resulting discipline. Plaintiff's filing, R. 30-13.  Only Plaintiff's reassignment of duties may be ever arguably sufficient to be considered an adverse personnel action.  However, he did not raise the reassignment from Family ("Flag") Housing in his Formal Complaint, dated June 22, 1999. Id., R. 30-2 to 30-8.  In fact, one of the requested remedies for the alleged discriminatory treatment was to be reassigned altogether out of the Family Housing Department, Series GS-1173. Id. at 30-8.  In any event, other circuits have held, and the D.C. Circuit has noted, that "changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes."  Mungin v. Katten, Muchin & Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997); Bryant v. Brownlee, 265 F.Supp.2d 52, 62 (D.D.C. 2003).

Hostile Work Environment Claim.

In his filing, Plaintiff ignores the limitations on Plaintiff's hostile work environment claim as set forth in the Agency Acceptance Letter of December 13, 1999 [R.1, Exhibit A]. Those limitations are:

> He was subjected to continuous and on-going harassment by management officials beginning March 4, 1999, which included being accused of abusing his telephone privileges, having his supervisor label him inadequate in the performance of his duties & having the Agency investigate him regarding possible sexual harassment; . .

R. 1, Exhibit A.

Instead, Plaintiff begins his claim in December 1997 and references only two events that

clearly occurred after March 5, 1999, *i.e.*, his transfer/reassignment and the investigation into the sexual harassment incident involving MS2 Arthur. See R. 30, ¶¶ 21-25.   The reassignment was related in part to his performance and in part to the sexual harassment investigation.  As noted in Defendant's Opening brief, the agency has an affirmative responsibility to investigate allegations relating to sexual harassment charges. Flanagan v. Ashcroft, 316 F.3d 728 (7th Cir. 2003); see also Ginger v. District of Columbia, et al., 477 F.Supp.2d 40, 53 (D.D.C. 2007) (initiation of investigation that does not result in discipline not adverse).  In Plaintiff's filing, he asserts that the "Interview With MS2 Arthur On 19 Mar 99" was false.  R. 30, p. 15.  Defendant urges the Court to give no weight to Plaintiff's confused rationale for urging this conclusion. It appears to be rooted in Plaintiff's assumption that MS2 Arthur refused to cooperate. Id. at p. 16.  To make the events associated with the interview of MS2 Arthur clear for the Court, Defendant has attached an Affidavit, dated March 13, 2008, executed by Lt. Commander ("LCDR") Trotta. Exhibit E.  LCDR Trotta explains in the affidavit that MS2 Arthur made a verbal statement to him and LCDR Ginnetti and that LCDR took notes and transcribed them. MS2 Arthur then reviewed the typed statement, corrected it, and signed and dated it. Id. at ¶¶ 6 & 7.  As noted above, because the events raised serious concerns for the Navy, the Navy had an obligation to investigate.   To the extent that Plaintiff was under stress during that period of time is understandable.  However, the investigation was based on legitimate nondiscriminatory reasons and nothing that plaintiff has alleged qualifies as harassment under applicable law, *i.e.*, conduct that permeates the workplace with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. at 78.

11

**IV.  <u>Plaintiff's Motion for a Rule 37 Default Judgment Should be Denied</u>.**

Plaintiff continues to argue to this Court that Defendant has willfully withheld discovery or been purposely evasive. <u>See</u> Plaintiff's filing at pp. 18-21.  However, Plaintiff has had no difficulty responding to Defendant's dispositive motion.  Indeed, Plaintiff has filed his own Cross Motion for Summary Judgment.

Defendant does not believe that he has abused the discovery process and has gone to extremes to attempt to resolve Plaintiff's concerns on at least three occasions.  <u>See</u> R. 28. As Defendant has already responded to this motion in his opposition to Plaintiff's Second Rule 37 Motion to Compel, filed on February 19, 2008, he will not repeat the arguments made in that filing. <u>See</u> <u>Id</u>.  The Court is respectfully referred to that filing in opposition to Plaintiff's present motion.  However Defendant notes that Plaintiff's request for a default judgment or any other sanction is clearly unwarranted.  As noted above, Defendant has answered the written discovery. The written discovery Plaintiff seeks, i.e., admissions regarding the nonexistence of documents outside of the Report of Investigation concerning his poor job performance and his sexual prowess, have no impact on Plaintiff's ability to argue the merits of his case and defend against Defendant's dispositive motion.  Should documents be found, presumably they would be inadmissible.  However, no additional documents have been located.  Likewise, Plaintiff's claims concerning allegedly unanswered interrogatories wherein valid objections have been made have not detrimentally impaired his ability to respond to Defendant's dispositive motion..<u>See</u> R. 28.

CONCLUSION

For the reasons set for herein and in Defendant's Motion to Dismiss or for Summary Judgment [R.19], and Defendant's Opposition to Plaintiff's Second Rule 37 Motion to Compel

12

[R. 28], Defendant respectfully requests that Defendant's Motion to Dismiss or for Summary Judgment be granted and that Plaintiff's Cross Motion for Summary Judgment and Motion for Default Judgment be denied. A proposed order is attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:

ISAAC J. NATTER, Esq.
Assistant Counsel
U.S. Department of the Navy
Naval District Washington
Bethesda Branch
National Naval Medical Center

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL E. LIPSCOMB,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**DONALD C. WINTER,** )<br>**Secretary of the Navy,** )<br>)<br>**Defendant.** ) | **C.A. No. 1:07CV00103 (JDB)** |

## DEFENDANT'S STATEMENT ADDRESSING PLAINTIFF'S UNDISPUTED FACTS

Defendant addresses Plaintiff's "Undisputed Facts" appearing in Plaintiff's Response to Defendant's Motion to Dismiss or for Summary Judgment & Cross Motion for Summary Judgment or Default Judgment.  R. 30  Plaintiff's facts do not comport with LCvR 7(h).  They do not address Defendant's Statement of Material Facts Not in Dispute as required by the rule, and therefore the Court may deem Defendant's facts as conceded.  To the extent that they are provided to support Plaintiff's Cross Motion for Summary Judgment, they represent mistatements of the record or rely for their materiality on or involve facts outside of the period involved in this law suit.  Nevertheless, Defendant has attempted to address each one with appropriate citations to the record.

1.      Not disputed, except to state that the only claims before this Court are based on the Plaintiff's race and sex. See R. 1 (Complaint), Exhibit A, n. 1.

2.      Not disputed that Plaintiff took training courses after 1996.

3.      Not disputed that Plaintiff received an "Outstanding" performance Appraisal for the period of March 1997 to October 1997 and was recommended for promotion, but this fact is not material to the grant of summary judgment in favor of Defendant.

4.      Not disputed, but Defendant notes that Plaintiff received a rating of "Exceeds

Fully Successful" for the first period during which Ms. Brown supervised Plaintiff. R. 19, Attachment 12.

5.      Disputed that Plaintiff's performance appraisals went from "Outstanding" down to "Acceptable" during period Plaintiff was supervised by Ms. Brown. Plaintiff received a rating of "Exceeds Fully Successful" during the first period he was supervised by Ms. Brown. Id. After that rating period, the ratings system changed from a 5 tier system comprising "Outstanding," "Exceeds Fully Successful," "Fully Successful," "Minimally Successful" and "Unacceptable" to a pass/fail system in which the maximum possible rating was "Acceptable." R. 19, Attachment 14.  Defendant submits that Plaintiff's failure to disclose this change in the Agency's performance ratings system is a seriously misleading omission.  Defendant also disputes that "reassignment" is an element of the performance rating system as indicated by Plaintiff. See Id.

6.      Disputed. See above at ¶ 5.  In addition, Ms. Brown based her performance comments on actual observations and feedback, not unsubstantiated allegations. See R. 19, Attachment 11 (Brown Affidavit), pp. 33-36 R. 19, Attachment 13 at pp. 197, 202-203 and 213 (Employee Performance Journal Progress Report); R. 19, Attachment 2 (Plaintiff's Deposition) at p. 96, line. 22; p. 97, lines 1-12 (Plaintiff acknowledges that an Admiral complained about his failure to keep appointments).

Defendant also disputes ¶6[i] that Ms. Brown's ratings were contrary to government policy.  Specifically, Plaintiff asserts that the performance appraisal system accounts for two customer complaints; only one specific complaint was recorded, but Plaintiff was also rated as "Acceptable" in the "Communications" element, as per its description. R. 19,

Attachment 14 at p. 199 (Plaintiff's March 1999 performance evaluation). Thus, the rating was entirely consistent with government policy and the listed elements in the performance evaluation system.

Defendant does not dispute ¶6[ii] in that the performance evaluation does reference Plaintiff's encounter with MS2 Denise Arthur, but disputes Plaintiff's characterization of MS2 Denise Arthur's participation in the sexual harassment allegation. See Attachment 16, pp. 42-44. Defendant also notes that Plaintiff refused to meet with the investigator to be interviewed regarding his own EEO Complaint. R. 19, Attachment 2, (Plaintiff's Depositon) at p. 85.

Defendant disputes ¶6[iii], and states that all comments included on Plaintiff's performance evaluations were based on Plaintiff's conduct and/or performance, and were necessary and proper to document Plaintiff's performance. See R. 19, Attachment 2, 11, & 19.

7.      Disputed, except to agree that Plaintiff did not file an EEO complaint in 1997. Disputed that Ms. Brown routinely resubmitted a request to promote Plaintiff in1999. See Exhibit A, hereto (Brown Declaration, dated March 18, 2008); R. 19, Attachment 11, p. 34. Disputed that Plaintiff "trained" a Caucasian employee and then she was promoted into the same GS-11 position to which Plaintiff had been detailed. R. 30, p. 30-21, p. at 153 (documentation demonstrating promotion was in 6/5/00, a year after Plaintiff's Formal Complaint in this case). Moreover, the promotion filled by this individual was a competitive promotion for which Plaintiff did not compete. Id.; R. 19, Attachment 2, at pp. 185-187, p. 188 line 3-18.

8.      Disputed. Plaintiff's own testimony was that after 1998, he didn't put in any more for a promotion.  R. 19, Attachment 2, p. 44, lines 6-9; see Exhibit A, hereto.  Plaintiff's assertion is that he sought EEO Counseling based on a notation in his Progress Notes is without a factual

basis in the record.  The only discussion with the EEO Counselor concerning a nonpromotion

was in connection with a one considered by Commander Arrowood, Commander, Naval Station

Washington. R. 19, Attachment 1 at p. 13.  Commander Arrowood was the Commander of the

Naval Station Washington when Ms. Brown submitted Plaintiff's promotion in 1998.  She was

not in that position in 1999.  See Exhibit B, hereto.  Plaintiff's own, extended, statement of what

he perceived to be the Agency's discrimination against him, filed in his Formal Complaint also

fails to mention the alleged March 4, 1999 comment regarding promotion. R. 30 at 30-2 through

30-8.  In sum, nowhere in the record is there evidence that Plaintiff discussed a "March 4, 1999

nonpromotion" claim.

9.      Disputed. Plaintiff acknowledges in his deposition that he doesn't recall

requesting a promotion after 1998. R. 19, Attachment 2 at p. 44, line 8-10. Plaintiff's supervisor,

Glenda Brown, testified that she resubmitted a request for his promotion in March 1998, but not

thereafter. Exhibit A, hereto.  She also stated that in late1998 she was involved in discussions to

downgrade Plaintiff. Id.; R. 19, Attachment 11, p. 34.  Her March 1998 submission was returned

on March 8, 1999, without approval. Id.  Although there is ample evidence to suggest that

Plaintiff was well aware of the fact that he was not up for promotion, there is no evidence to

support Plaintiff's assertion that Ms. Brown submitted paperwork to promote him in March of

1999 or any time in 1999.  In addition, it is disputed that there was unprecedented criticism of

Plaintiff by his supervisor and he has pointed to only isolated facts involving his questionable

performance and other conduct warranting criticism Id. at pp. 33-36 and Attachment 13.

10.     Disputed, but notes that these facts are not material to the grant of summary

judgment in defendant's favor as they occurred after the filing of Plaintiff's Formal Complaint in

4

June 1999.

11.    Disputed that Plaintiff alleged on March 31, 1999, that he was the victim of discrimination based on the alleged March 4, 1999 nonpromotion. See R. 30, 30-2 to 30-8; Exhibit A & B, hereto.

12.    Disputed.  Defendant states that Plaintiff admitted that he misused his office telephone system. Attachment 2 (Plaintiff's Deposition) at p. 94, lines 7-9;  p. 133, lines 14-22; p. 134, lines 1-6; p. 135, lines 1-6.   Plaintiff's conduct with regard to the telephones had already been noted in the Employee Performance Journal. R. 19, Attachment 13 at p. 202 (Performance journal entries dated prior to March 1999).

13.    Disputed that Ms. Brown based her evaluation of Plaintiff's performance on a single complaint.  Indeed, the record shows that there were a number of complaints. R. 19, Attachment at p. 201-203. Defendant does not dispute that Ms. Brown indicated in Plaintiff's March 1999 performance appraisal that he was meeting performance deadlines, but noted that in the same appraisal: "The employee is not performing at an acceptable level, however, due to the critical nature of his job, I cannot allow Mr. Lipscomb to remain in his current position long enough to be deemed "unacceptable" for civil service duty." R. 30 at 30-28, p. 193. Defendant does not dispute that none of Plaintiff's Caucasian co-workers were transferred or "deprived of a recommended promotion" due to one or two complaints about their work, but submits that Plaintiff was not either. Plaintiff was not "deprived" of a promotion, and was transferred due to serious concerns expressed to management about his conduct and performance. Id. at p.193.

14.     Do not dispute that Plaintiff was temporarily assigned to desk duty and ordered not to have contact with customers due to MS2 Denise Arthur's sexual harassment complaint, but

submits that Plaintiff did not raise his desk duty or prohibition from customer contact in his EEO Complaint and it is therefore not an issue in this case. Moreover, defendant disputes that his reassignment was due solely to MS2 Arthur's sexual harassment complaint. While the complaint may have contributed to his reassignment, the Agency had been contemplating reassigning him since November 1998. R. 19, Attachment 11, p. 34.

15.    Disputed ¶15[i] Although Admiral (ADM) Nelson and his wife brought their concerns about Plaintiff's conduct with MS2 Arthur to the Command's attention, the complaint itself was made by MS2 Arthur. R. 19, Attachment 16, pp 42-44 (sworn statement of MS2 Denise Arthur).

Disputed ¶15[ii] that MS2 Arthur refused to give an affidavit. Id. Dispute ¶15[iii] that MS2 Arthur placed her signature on a "misleading document." Do not dispute that Plaintiff gave a detailed account of his conversation with MS2 Arthur. Disputed that Plaintiff was removed from his job and reassigned based solely on MS2 Arthur's sexual harassment allegation. See R. 19, Attachment 11, p. 34.

16.    Do not dispute, except to point out that no other employee in Plaintiff's office (regardless of race or other protected class) has been accused of sexual harassment, Plaintiff was not transferred solely because of the sexual harassment complaint, and MS2 Arthur, the accuser, did provide a sworn statement. R. 19, Attachment 16, pp. 42-44.

17.    Do not dispute that Plaintiff's first level supervisor, in 1997, recommended him for promotion in 1998. Disputed that the record citations supports the assertion that Plaintiff was assured by Ms. Brown that his promotion documentation would be routinely resubmitted. Dispute that Plaintiff was directed to train Ms. Thompson; that he trained her and she got his

promotion. Whether or not Plaintiff trained Ms. Thompson is not material to the grant of

Defendant's Motion for Summary Judgment.  Moreover, Ms. Thompson was promoted in June

2000 to a position she competed for and plaintiff did not. R. 30 at 30-21, p. 153 (selection

certificate for a GS-11 position in June 2000). There is no evidence in the record to support

Plaintiff's factual assertions that he was doing GS-11 work in his office while GS-11 employees

were on medical leave and note that the GS-11 employees were not on medical leave during the

period of his complaint.

18.     Disputed that Ms. Brown immediately agreed that Plaintiff was not suited for Flag

Housing following a complaint from a female resident to the same effect. Ms. Brown's statement

regarding Plaintiff's unsuitability for Flag Housing was based on his performance and not on one

complaint from a female resident. R. 19, Attachment 11, p. 35.

19.     Disputed that a promotion for Plaintiff was pending in 1999. See Exhibit A,

hereto.  Plaintiff has acknowledged that paperwork to promote him was submitted in 1997 and

early 1998, not during 1999.  Attachment 2, p. 44, lines 6-10; see also Attachment 11, p. 34.

There is no evidence that it was resubmitted in 1999.  Dispute that the Caucasian female who he

allegedly was instructed to train was promoted over him R. 30 at 30-21 at 153, documentation

demonstrating that Ms. Thompson was selected for a GS-11 position in July 2000.

20.     Disputed that the accusation that Plaintiff engaged in sexual harassment was made

by party other than MS2 Arthur. Exhibit E, hereto; R. 19, Attachment 16 at pp. 42-44. Dispute

that MS2 Arthur refused to provide an affidavit. Id. Do not dispute that Plaintiff was temporarily

assigned to desk duty and ordered not to have contact with customers due to MS2 Denise

Arthur's sexual harassment complaint. Disputed that Plaintiff was removed from his job and

reassigned based solely on MS2 Arthur's sexual harassment allegation. R. 19, Attachment 11, pp. 34-36 (evidence relating to discussion to reassign Plaintiff prior to sexual harassment allegation). Dispute that supporting citations support the statement that Ms. Brown made "stereotypical sexist statements" concerning Plaintiff.  Indeed, Plaintiff relies on a Ms. Brown's statement made over a year after Plaintiff's filed his Formal Complaint as evidence of the facts asserted. R. 19, Attachment 11, pp. 33-36.

21.    Disputed that from the time Ms. Brown arrived as Plaintiff's supervisor in December 1997 unprecedented criticisms were documented for Plaintiff's performance and/or conduct deficiencies. Plaintiff fails to cite prior documentary support for this statement prior to March 5, 1999.  That appraisal does not reflect unprecedented criticisms.  R. 19, Attachment 14, p. 201.  The remaining documentation is for a period beyond the scope this case.

22.    Disputed that Ms. Brown submitted Plaintiff's information for promotion while simultaneously negatively noting Plaintiff's file. Ms. Brown last submitted Plaintiff's name for promotion in March, 1998 (R. 19, Attachment 11, p. 34). There is no evidence in the record and Plaintiff points to none that establish that she recommended Plaintiff for promotion after March 1998 and therefore there is no support in the record to establish that she was rating and making negative comments at the same time prior to her evaluation of him on March 5, 1999.

23.    Disputed that there were "never" over two complaints from customers. See ¶ 6, supra, which contains records of numerous complaints and other deficiencies in Plaintiff's performance.  See also Exhibit A, hereto.

24.    Disputed that Ms. Brown went in search of complaints from contractors and Plaintiff's co-workers. R. 19, Attachment 11 at p. 36 The citation relied on by Plaintiff

establishes that Ms. Brown did not solicit comments but reported receiving them from

customers, co-workers, etc.  See *e.g*., Exhibit C & D, hereto.

25.    Disputed that Ms. Brown found something negative to note about "whatever

Plaintiff did" under her supervision. Disputed that Plaintiff was "deprived" of a recommended

promotion. Disputed that none of Plaintiff's Caucasian co-workers were promoted while

similarly situated to Plaintiff. Do not dispute that "none of Plaintiff's Caucasian co-workers

trained people and the very ones trained were promoted over them." Disputed that Plaintiff

trained people and "the very ones trained were promoted over" him. Plaintiff provides no

documentary support for these allegations.  Do not dispute that "none of Plaintiff's Caucasian co-

workers were transferred and deprived of a recommended promotion due to one or two

complaints about their work." Disputed that Plaintiff was transferred and deprived of a

recommended promotion due to one or two complaints about his work. See Attachment 11, pp.

34-36, Attachment 13.

26.    Disputed that Plaintiff made contact with an EEO Counselor the same month he

was informed that his pending promotion would not go forward. See Exhibit A, hereto. There is

no evidence in the record that Plaintiff had been recommended for a promotion or had a

promotion pending at anytime in 1999.

27.    Do not dispute that Plaintiff made contact with an EEO Counselor in March 1999,

except to dispute that Plaintiff was unfairly criticized, disputed that he was punished for the

number of telephone calls he made, dispute that the sexual harassment allegation was brought by

someone who did not initiate the allegation or refused to submit an affidavit. See R. 19,

Attachment 2 at 94, lines 7-9; p. 133, lines 14-22, p. 134, lines 1-6; p. 135, lines 1-6; Attachment

11, 13, 14, Attachment 23.

       28.     Do not dispute.

       29.     Do not dispute.

                          Respectfully submitted,

                                  /s/
                        JEFFREY A. TAYLOR , D.C. Bar # 498610
                        United States Attorney

                                  /s/
                        RUDOLPH CONTRERAS, D.C. Bar # 434122
                        Assistant United States Attorney

                                  /s/
                        CLAIRE WHITAKER, D.C. Bar # 354530
                        Assistant United States Attorney
                        United States Attorneys Office
                        555 4th Street, N.W., Room E-4204
                        Washington, D.C. 20530
                        (202) 514-7137

OF COUNSEL:

ISAAC NATTER, Esq.
Assistant Counsel
U.S. Department of the Navy
Naval District of Washington

Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL E. LIPSCOMB,              )
                             )
        Plaintiff,                )
                             )
        v.                        )      C.A. No. 1:07CV00103 (JDB)
                             )
DONALD C. WINTER,                 )
Secretary of the Navy,            )
                             )
        Defendant.                )

## AFFIDAVIT

GATESVILLE, TX.

I, Glenda C. Brown, make the following statement under oath or affirmation:

1. I was employed by the Department of the Navy as the Flag Housing Director, Deputy Director for Family Housing, and in that capacity I was Michael Lipscomb's first level supervisor from December 1, 1997 through May 30, 1999.

2. LCDR Brett Blanton, who supervised Mr. Lipscomb prior to my arrival, had prepared a promotion package for Mr. Lipscomb and I merely resubmitted it in March 1998, shortly after I began supervising him. I did not routinely (or otherwise) resubmit his name for promotion after that date, although I did temporarily detail him to a GS-11 position on November 9, 1999.

3. I had never indicated to Mr. Lipscomb that he had a promotion pending at any point that I supervised him, other than when I had submitted his name for promotion in March 1998. Mr. Lipscomb inquired about his promotion in October 1998, and was told it was not forthcoming.

4. I never promised any employee that they would be promoted at any time. To do so is poor management, because an employee's performance could change at any time prior to their promotion.

5. Beginning in 1998, I recorded Mr. Lipscomb's job performance in an employee performance journal (Attached as "Exhibit 1"). I was the author of all of the entries about Mr. Lipscomb in the journal during the period I supervised him.

6. Beginning in November of 1998, I had conversations with my supervisors about the possibility of downgrading Mr. Lipscomb to a GS-07 or transferring him to a different department because I had doubts about his ability to successfully perform at the GS-09 level. In January 1999, I sent an e-mail to my supervisor readdressing the issue of reassigning Mr. Lipscomb (Attached as "Exhibit 2").

7. Mr. Lipscomb's performance began to decline in August, 1998.

Brown Affidavit
March 18, 2007

Page 1 of 2
Initials: _____

8.  On March 4, 1999, I wrote a journal entry about Mr. Lipscomb's overall work performance, in which I noted that: "Employee is told his pending promotion is not forthcoming." This entry was a summary of my conversation with Mr. Lipscomb, and not an accurate, word for word, representation of what was said to him. In that conversation, as well as in others, I had spoken with Mr. Lipscomb about problems with his job performance and why I felt he was not performing his duties up to the standards I expected. In our conversations, I made it clear to him that he needed to focus on his work in the present, rather than the potential work he would be doing in the future if he were to be promoted. I told Mr. Lipscomb that if he was unable to accomplish his job duties effectively at the GS-09 level, he had no reason to believe I would resubmit his name for promotion.

9.  Our conversation was about how his performance needed to change to improve his chances of receiving a career ladder promotion.

10. I have never discriminated against Mr. Lipscomb based on his race, color, gender, or for any other reason. I did not create a hostile work environment for Mr. Lipscomb. I wrote honest assessments of Mr. Lipscomb's performance which reflected his actual progress or regression, as well as noting comments I received from our customers about him.


_Glenda C. Brown_
Glenda C. Brown

_3-18-08_
Date


Brown Affidavit
March 18, 2007

Page 2 of 2
Initials: _gcb_

EXHIBIT 1

Employee performance journal - progress reports.

| Date | Current Projects | Evaluation of Work, Problems, Successes, etc. |
|------|------------------|-----------------------------------------------|
| 1/3/98 | Key Control | Employee has accomplished accountability of keys within the office. Working toward development of a Key Control SOP for the office. Making great strides. Very pleased with results. |
| | Load 98/99 work | Working with EMSI. Has accomplished both tasks. Have a few bugs to work out but basically ahead of schedule. Has made efforts to meet with EMSI. |
| 8/19 | IDP | Item 1 accomplished. Items 3-4 unavailable at this time - need to reschedule. |
| | Property Inv. | Some work accomplished. Unlikely will meet this suspense. No plan in place as to how to accomplish. |
| | Desktop SOP | About ½ way through, but unlikely will meet this suspense. No further work occurred on Key Control SOP. |
| | Overall work performance | Employee seems pre-occupied, forgetful and unattentive. Work falling behind. Critical work orders are not in place for year end close-out. Seems lost. Have offered daily help checks and time saving tools to aid and assist. Received call from FHMI coordinator. Employee was observed dozing daily in class at PMI. It is believed this was from employee's medication. |

2/1

**Employee performance journal - progress reports.**

| Date | Current Projects | Evaluation of Work, Problems, Successes, etc. |
|---|---|---|
| 1/14 | Overall work Performance | Received letter of complaint from a resident stating employee entered his home with permission. After discussion with the employee it was determined the statement was true. The employees' intentions were to protect the quarters and the residents. Discussed w/employee to not page this resident, and that even though he had the best intentions, we need to not enter quarters without permission. |
| 3/4/99 | Property Accountability | Employee has not completed this task and still has no plan in place. Workload has not prevented this from being accomplished, but poor planning has. |
| | Desk-top SOP | Little progress made and ample time was provided. |
| | Overall work performance | Work continues to lag. Employee looses track of appointments and commitments. Employee has been told that his pending promotion is not forthcoming and that his performance will be monitored closely. Employee is aware his performance is being documented in efforts to help him meet his obligations.<br><br>2/2 |

**Employee performance journal - progress reports.**

| Date | Current Projects | Evaluation of Work, Problems, Successes, etc. |
|------|------------------|-----------------------------------------------|
| 3/5/99 | Overall work performance | Received a complaint from a resident stating Mr. Lipscomb was not inspecting the work he ordered and was making appointments with the resident and staff and then not coming, not following through, etc. She has asked that although the employee is polite and nice, that he is not Flag Housing material. Employee was counseled to limit contact with this resident and assure he makes and keeps appointments. Employee was instructed to turn in weekly call sheets so that management can see the concerns of the residents. Employee was notified that his performance will be reviewed again in two months and that progress is expected. |
| 3/16 | Overall work performance | Upon review of the October 98 phone bills, (just made available to me 3/15/99, it was discovered that Mr. Lipscomb made 307 phone calls from his desk in a period of 20 working days. This does not include phone calls using the cell phone. This number of calls is well over 100% more of the average of all other members of the Housing Department. Management concerns are that with having only 12 customers it is nearly impossible to make an average of 15 calls from the desk phone per day when approximately 80% of the job responsibilities lie out side of the office. Employee was instructed to immediately limit personal phone calls in and out to only essential calls which would allow him to touch base with his family, at a duration to normally not exceed over one phone call per day. Employee stated he felt that at least 70% of the calls were work related. It was suggested to him he may wish to try thinking through an issue without first trying to get others to track down information. Employee concurred. |

2/3

APR 2 1 1999

| 3/16 | | An appointment was scheduled with Mrs. Herdt (MCPON spouse) for 3/15/99 between Mr. Lipscomb, Ms. Curry and an outside contractor. Mr. Lipscomb had the lead on the project. After the time for the appointment had passed Mrs. Herdt phoned Ms. Curry asking why no one had shown up. It was Ms. Curry's understanding, the parties that were to go there were Mr. Lipscomb and the contractor. Neither Mr. Lipscomb nor the contractor let the customer or Ms. Curry know they would not arrive at the appointed time. Employee stated he didn't know there was an appointment. I urged Mr. Lipscomb, as lead on the project to make it his business to be aware of what is going on concerning issues, and urged him to see the ball is not dropped and our customers inconvenienced. |
| --- | --- | --- |

*197*

**EXHIBIT 2**

## Brown, Glenda

| | |
|---|---|
| **From:** | Brown, Glenda |
| **Sent:** | Monday, January 11, 1999 11:25 AM |
| **To:** | Tarlton, Mabel |
| **Cc:** | Trotta, Andrew (LCDR) |
| **Subject:** | Michael Lipscomb |

Just a memory jogger - if you get a chance to bounce this off Judy Mitchell - I think it would be a good idea.  Michael doesn't have another change of occupancy in his qtrs until April.  It would be good if we relocated him prior to then.

glenda

173

Exhibit B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MICHAEL E. LIPSCOMB,                    )
                                        )
                  Plaintiff,            )
                                        )
           v.                           )          C.A. No. 1:07CV00103 (JDB)
                                        )
DONALD C. WINTER,                       )
Secretary of the Navy,                  )
                                        )
                  Defendant.            )
_____)

**AFFIDAVIT**

Washington, D.C.

I, John J. Imparato, make the following statement under oath or affirmation:

1. I am employed by the Department of the Navy as the Director, Corporate Information Management HQ, Naval District Washington (NDW), at the Washington Navy Yard.
2. I have worked at the Washington Navy Yard since December 1994.
3. CAPT Jackie Arrowood served as the Commanding Officer for Naval Station Anacostia from 1996 until September, 1998.
4. CAPT Arrowood departed the Command in 1998. I attended her Change of Command ceremony in September 1998.


_____          _18 MAR 2008_
John J. Imparato                          Date

*Exhibit B*

Exhibit C

As a supervisor in the Public Works Center, I was detailed to the Flag Housing Staff in October 1996. My assignment was to assist with troubled areas.

Managing the Flag Officer's quarters is a demanding job. Although Mr. Lipscomb tried hard, at times he was lacking in areas.

I was asked on several occasions, by the residents, to take complaints back to the office. Some of the complaints concerned Mr. Lipscomb not getting work accomplished, not keeping appointments, not making appointments before arriving and a lack of professionalism.

On several occasions I spoke with Mr. Lipscomb concerning the abuse of hi Government cell phone, explaining it was official calls only.

On occasions prior to March 1999, Mrs. Brown discussed with me the possibility of reassigning Mr. Lipscomb to another department within housing. Her concerns were finding a suitable fit for Mr. Lipscomb within the organization that did not jeopardize our customers or our mission.

I have no reason to believe Mrs. Brown would discriminate against anyone on the basis of race, sex, religion or physical disability.

I certify under penalty of perjury that the foregoing is true and correct, executed on June 13, 2000.

*George Coffman*

George Coffman, WS12

38

Exhibit C

Exhibit D

NAVSTA HOUSING

Michael Lipscomb
Management of Flag Housing

To Whom It May Concern:

1.  I have observed Michael Lipscomb's management techniques and style for the past 5 years. These are
    the results of my observations, as I recall them.

    a.  Michael has not had the ability to manage more than one issue at a time. He can not track more
        than one issue at a time and therefore, can't coordinate any multiple tasks, such as, two changes of
        occupancies occurring at the same time.  It is paramount that we manage all work that is going on
        at each house.  Admirals are looking for status of work and Michael can not remember or didn't
        write down status of work. Therefore, co-workers were asked to track work and keep status for
        him.  One being Mr. Coffman and the other myself.
    b.  Mr. Lipscomb has had difficulty managing because of his lack of ability to use any sort of tracking
        devices such as, day timer, computer, etc. I do not believe Mr. Lipscomb is ready to become a GS-
        11 or higher because of his lack of managing skills.
    c.  Michael always needs one on one supervision and lacks the ability to make any decisions related to
        flag housing. Michael can not work unsupervised. As a result, His ability to manage is limited.

2.  I have no reason to believe Mrs. Brown would discriminate on the basis of race, sex, religion or
    physical disability.

I certify under penalty of prudery that the foregoing is true and correct executed on June 13, 2000.

KEN RIDGEWAY

40

Exhibit D

Exhibit E

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL E. LIPSCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07CV00103 (JDB) |
| | ) | |
| DONALD C. WINTER, | ) | |
| Secretary of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT

WASHINGTON, D.C.

I, Andrew Trotta, make the following statement under oath or affirmation:

1.  In March, 1999 I was a Lieutenant Commander (LCDR) in the U.S. Navy. Beginning in June 1997 and until June 1999 I was the Flag Housing Officer for the Navy Family Housing Office, Naval Support Activity Anacostia. In that capacity I was employed as Michael Lipscomb's second level supervisor.

2.  During February or March, 1999, I became aware that Vice Admiral (VADM) and Mrs. Nelson, Navy Housing tenants serviced by my command, were concerned that one of my employees, Michael Lipscomb, may have sexually harassed Mess Specialist Second Class (MS2) Denise Arthur, their house's mess steward.

3.  Based on this concern, I asked MS2 Arthur if she would be willing to be interviewed regarding this allegation and provide a statement for the record. She agreed to do so.

4.  On March 19, 1999, LCDR Ginnetti and I met with MS2 Arthur at VADM Nelson's quarters and received a verbal statement from MS2 Arthur. The statement is attached to this affidavit as Exhibit 1, and is a true and accurate copy of the statement discussed in this affidavit.

5.  During MS2 Arthur's verbal statement, LCDR Ginnetti and I took notes, which LCDR Ginnetti then typed out and presented to MS2 Arthur for review.

6.  MS2 Arthur read and reviewed the statement we had prepared based on her oral responses to our interview. She edited and corrected anything she believed was inaccurate, which she initialed.

7.  After reading, reviewing and correcting the written statement, MS2 Arthur signed and dated it, and in doing so attested that the statement was true and correct to the best of her knowledge.

8.  LCDR Ginnetti signed the statement as the individual who prepared it for MS2 Arthur, and I signed it as the Interim Director of Family Housing.

Andrew Trotta, CDR, CEC, USN (Ret.)                    13/MAR/2008
                                                           Date

Exhibit E

**EXHIBIT 1**

## INTERVIEW WITH MS2 ARTHUR ON 19 MAR 99

This interview took place at ADM Nelson's residence, Quarters B, NNMC Bethesda at approximately 1015. This was a verbal interview, given to LCDR Trotta, Family Housing Director and LCDR Ginnetti, witness. This statement is being drafted from this interview and reviewed by MS2 Arthur.

MS2 Arthur stated this incident took place sometime in mid-February. Mrs. Nelson had a question about some filters on the washer machine and asked MS 2 to talk to Michael Lipscomb, the housing manager about them. Mr. Lipscomb came over to the house to see the fasteners. MS2 had to ask him a couple of times if he is going to take care of the fasteners. On one of his trips there, he started talking in the kitchen to MS2 explaining why he had not gotten to the fasteners earlier because of personal problems- he starting talking about his wife, kids and showing pictures of his kids to MS2. MS2 was returning the small talk about "oh I have a daughter too, she is 4, I don't have any pictures with me". Mr. Lipscomb than starting talking about how he did not want to have lots of kids, saying he was trying to prevent having too many, his wife had taken the pill, but did not like the pill, he finally got fixed or try to, but the doctors failed to tell him about a procedure. Mr. Lipscomb went on to tell her that the doctors forgot to tell him that he had to wait to have sex, he needed to heal first. When he went back to the doctor for his check-up he found out that it did not work. He told her that <u>some young women</u> told him to go and have lots of sex to get the sperm out. MS2 did not say anything to that and was not saying much at this point of the conversation. He kept talking. Finally MS2

said that she could not help him, that he needs to talk to his wife or Planned Parenthood or doctor. He than told her that he has talked to his doctor and all the doctor says is he needs the procedure again and his wife does not want to take the pill. He than asked her what do you use and do you know of other birth control? MS2 said no and that she could not help him with this.

Mr. Lipscomb than starting talking about God, going to church with Chief Nixon (the MS who worked there before). She finally cut him off and got him out of the house. The next day, Mrs. Nelson asked MS2 if Mr. Lipscomb had come over. Seeing something was wrong, she pressed her to tell her what had happened. She did. Mrs. Nelson told MS2 that she would not say anything to ADM Nelson or any one else so she would not be embarrassed but did ask MS2 if she told her husband. MS2 said yes, she had told her husband, EM2 Arthur the night before. MS2 does not know why Mrs. Nelson finally told ADM Nelson or when.

MS2 admitted she never did ask Mr. Lipscomb to stop or say anything to the effect this is making me uncomfortable etc (Red/yellow). She said she just try to steer the conversation to a different path that she couldn't help him, go elsewhere, tried the approach "I can't help you, these people can, professionals, and try to stop the conversation and lead him to the door.

43

When MS2 first reported on board, Mr. Lipscomb started coming around a lot, introducing himself, even though she had meet him through MSC Nixon. He would first

ask if there were any problems and than tell her to call him if there is a problem; he is the

one to call etc.  His coming over so frequently made her a call MSC Nixon to see if this

was normal or not.  MSC Nixon told her that Mr. Lipscomb must have a crush on you.

MS2 said she did not think so since she always wears her rings except when she is

~~cooking.~~ *MRS. NELSON SAID TO MS2 THAT SHE THOUGHT IT WAS* ~~MSC Nixon told her that Mr. Lipscomb and himself use to pray together and~~ *STRANGE THAT THEY PRAYED IN HER SPACES AND THAT WAS* ~~have lunch together until Mrs. Nelson asked that the praying stop, saying that they could~~ *SOMETHING THAT SHOULD BE DONE ON THEIR LUNCH BREAK.* ~~pray on their lunch break.~~ *DSA*

This statement contains 3 pages prepared by LCDR Ginnetti as we discussed.  I have
reviewed and initial any changes and attest that the information stated here is true and
correct to the best of my knowledge.

_Denise S. Otto_                                    3-22-99    1100
Name                                                 Date/Time

Individual prepared statement:

_____                            22 Mar 99   1102
Name                                                 Date/Time

Director, Family Housing:

_____ LCDR, CEC, USN           22 MAR 99   1103
Name                                                 Date/Time

44

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MICHAEL E. LIPSCOMB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C.A. No. 1:07CV00103 (JDB)** |
| | ) | |
| **DONALD C. WINTER,** | ) | |
| **Secretary of the Navy,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

<u>ORDER</u>

UPON CONSIDERATION of defendant's motion for summary judgment, plaintiff's opposition, cross motion for summary judgment or for default judgment, the oppositions and replies thereto, and for the reasons set forth in defendant's motion and response to plaintiff's cross motion, and in defendant's opposition to plaintiff's second motion to compel, it is

HEREBY ORDERED that defendant's motion for summary judgment is herein granted, and it is

FURTHER ORDERED that plaintiff's cross motion and motion for default judgment are herein denied.

Judgment is entered on behalf of defendant and this case is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE